

**ORDERED in the Southern District of Florida on March 9, 2021.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| In re | ) | CASE NO. 15-28640-RAM |
| | ) | CHAPTER 13 |
| SARA I. GARCIA, | ) | |
| | ) | |
|      Debtor. | ) | |
| | ) | |
| SARA I. GARCIA, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADV. NO. 17-01122-RAM |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
|      Defendant. | ) | |

### ORDER FINDING THAT BANK OF AMERICA
### HAS STANDING AND SETTING DEADLINE FOR PLAINTIFF
### <u>TO SHOW CAUSE WHY ABATEMENT SHOULD NOT BE LIFTED</u>

1

Plaintiff's complaint against Defendant, Bank of America, N.A. ("BANA") asserts various causes of action related to a loan transaction.  Specifically, on September 19, 2007, Plaintiff, Sara Garcia (the "Plaintiff" or "Garcia"), borrowed the sum of $229,351.60 from BANA and executed a promissory note (the "Note") payable to BANA. To secure the Note, Garcia also executed a mortgage (the "Mortgage") in favor of BANA on property that she owns and is located at 2810 SW 102nd Place, Miami, Florida (the "Property").

Count Five of the Second Amended Complaint [DE# 86] objects to the proof of claim filed by BANA in Garcia's underlying chapter 13 case (the "POC").   The POC asserts a secured claim against the Property based upon the Note and Mortgage.  The issue addressed by this Order is whether BANA has standing to enforce the Note. For the reasons that follow, the Court finds that BANA has, and always had, standing to enforce the Note.  In addition, with the standing issue resolved, the Court will require the Plaintiff to show cause why the Court should not lift the abatement of this proceeding so that the proceeding can move forward.

## Factual and Procedural Background

This adversary proceeding has been pending for nearly four (4) years.  The briefing and now, by this Order, the Court's decision on the standing issue, was triggered by the Court's

January 23, 2019 Order (1) Abating Discovery, (2) Setting Briefing Schedule and Hearing on the Issue of Bank of America, N.A.'s Standing, and (3) Cancelling Pretrial Conference (the "Standing Issue Scheduling Order") [DE# 249]. That Order includes substantial factual and procedural background, much of it repeated here.

On April 11, 2012, BANA filed a foreclosure action against the Plaintiff in the Miami-Dade County Circuit Court (the "State Court"), commencing Case No. 2012-014396-CA-01 (the "Foreclosure Case"). In the complaint, BANA alleges that it "is the servicer of the loan, holder of the Note, and is authorized to bring this present action." [DE# 265-3]. On March 21, 2014, the State Court dismissed the Foreclosure Case for want of prosecution.

On October 21, 2015, the Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code, commencing the underlying bankruptcy case (the "BKC Case"). On May 3, 2016, BANA filed a proof of claim in the BKC Case (the "POC") [Claim 4-1 in BKC Case]. As described in the introduction, by way of the POC, BANA seeks to enforce the same Note and Mortgage that were subject of the Foreclosure Case. Copies of the Note and Mortgage are attached to the POC.

The POC states that BANA is the creditor and that BANA has not acquired its claim from someone else [Claim 4-1 in BKC Case].

In Official [Bankruptcy] Form 410A, which is a Mortgage Proof of Claim Attachment, BANA names itself as the creditor and servicer of the Note and associated Mortgage [Claim 4-1, Part 1, in BKC Case].

On July 18, 2016, the Plaintiff filed an objection to BANA's claim (the "Objection to Claim") in which the Plaintiff asserts various affirmative claims against BANA and argues that CIG HFI 1ST LIEN MORTGAGE ("CIG") owns the Note [DE #110, para. 8 in BKC Case]. Attached as Exhibit "B" to the Plaintiff's Objection to Claim is a document (the "CIG Notice") that appears to be from a BANA subsidiary, BAC Home Loans Servicing, LP ("BAC Home Loans") [DE #110, Ex "B" in BKC Case].

The CIG Notice is addressed to the Defendant and is titled "Important Legal Notice." The CIG Notice states the balance due on the Note as of December 9, 2009 and affirmatively names (i) BAC Home Loans as the servicer of the Note and (ii) CIG HFI 1ST LIEN MORTGAGE ("CIG") as the "creditor to whom the debt is owed."

On September 3, 2016, BANA filed its Supplemental Response to Debtor's Objection to Claim (the "Supplemental Response") [DE #153 in BKC Case]. In the Supplemental Response, BANA states that "CIG is an identifying internal code used by the Bank and is not an entity separate from Bank of America, N.A." [DE #153, p.3 in BKC Case].

4

At a December 15, 2016 hearing on the Plaintiff's Objection to Claim, the Plaintiff moved *ore tenus* for leave to file an adversary proceeding against BANA. BANA did not oppose the Plaintiff's request for leave, and the Court entered an order [DE #254 in BKC Case] setting a deadline for the Plaintiff to file an adversary proceeding that would include both the Plaintiff's Objection to Claim and the Plaintiff's affirmative claims against BANA.

The Plaintiff filed the instant adversary proceeding on March 20, 2017, and extensive litigation ensued. BANA challenged the sufficiency of the Plaintiff's allegations, and the Plaintiff has appealed several orders entered by the Court. Finally, on July 23, 2018, the Court entered an order that should have paved the way for meaningful discovery to commence and for this proceeding to move forward. *See* Order Granting, in Part, and Denying, in Part, Plaintiff's Motion to Strike Defendant's Answer and Affirmative Defenses [DE #187].

Discovery, however, did not go forward. The Plaintiff objected to BANA's attempts to depose her and has not produced documents despite several orders compelling her to do so [DE #219]. Separately, the Plaintiff moved the Court for a judgment on the pleadings [DE #214]. In support of her Motion for Judgment on the Pleadings [DE #214], the Plaintiff filed various documents and

moved the Court to take judicial notice of those documents [DE #215]. Among the documents, under "Exhibit A," is (i) the CIG Notice, and (ii) additional correspondence from BANA to the Plaintiff (the "July 2011 Notice") [DE #215, pp.5-8].

The July 2011 Notice states that (i) CIG is "the creditor to whom the debt is owed[,]" (ii) "unless Bank of America, N.A. is listed . . . as the creditor of your loan, Bank of America, N.A. does not own your loan and only services your loan on behalf of your creditor," and (iii) effective July 1, 2011, BAC Home Loans Servicing, LP transfers servicing of the Note to BANA.

### Cause to Explore the Issue of BANA's Standing

At the January 4, 2019 hearing (the "January 4th Hearing") on the Plaintiff's Motion for Judgment on the Pleadings [DE #214], the Court found cause to further investigate the CIG Notice, the July 2011 Notice, and BANA's standing to enforce the Note because of admitted errors in BANA's pleadings and apparent inconsistencies in the record. The error admitted by BANA relates to a document that BANA filed in the Foreclosure Case and that BANA styled and repeatedly described as a "Lost Instrument Affidavit" (the "Lost Instrument Affidavit") [DE #215, Ex. "C" and "E"; DE #152 in BKC Case]. A more detailed description of the lost instrument issue follows.

On March 24, 2016, BANA filed a Motion to Remove Affidavit of

Lost Instrument from Court File and Return to Plaintiff's Counsel (the "Lost Instrument Motion") in the Foreclosure Case [DE# 215, p. 11].   Paragraph 2 of the Lost Instrument Motion refers to an affidavit of lost instrument filed in the Foreclosure Case on or about June 5, 2012.   Paragraph 3 of the Lost Instrument Motion states as follows: "Plaintiff requests that the affidavit of lost instrument be returned to undersigned counsel in order to proceed with a new action." (emphasis added).

The Debtor argued that BANA violated the automatic stay by filing the Lost Instrument Motion [DE #302 in BKC Case].   This Court found no stay violation [DE #131 in BKC Case], and that finding was affirmed on appeal.

In its August 23, 2016 Order in the main case finding no stay violation, the Court required BANA to "send the Debtor a copy of the lost instrument by September 13, 2016" [DE# 302 in BKC Case]. At that point, based upon the text of the Lost Instrument Motion and statements by BANA's counsel in open court, the Court and the Plaintiff believed that the lost instrument affidavit was a lost note affidavit.

This assumption was reinforced by BANA's September 9, 2016 Notice of Filing [DE# 152 in BKC Case].   In that Notice, BANA states that "[a]fter research, Bank of America, N.A. advises that the Lost Note Affidavit was filed by prior counsel in 6/2012 in

7

error." (Emphasis added).  The Notice went on to state that the state court had granted the Lost Instrument Motion, but that because of a backlog at the court, "we are awaiting return of the Lost Note Affidavit." (emphasis added).

Three months later, on December 9, 2016, BANA filed its Notice of Filing Affidavit of Lost Original [DE# 251 in BKC Case] attached to which is an Affidavit of Lost Original filed on June 5, 2012 in the Foreclosure Case.  Despite its repeated references to a "lost note affidavit" that was erroneously filed by BANA's counsel, the Affidavit of Lost Original attached to BANA's December 9, 2016 Notice was executed and filed by a process server and states that "the original Summons has been lost or destroyed" [DE# 251-1 in BKC Case].

This sequence of events raised several questions.  Did BANA file a lost note affidavit in the Foreclosure Case?  If not, did BANA have the original Note when it filed the Foreclosure Case? If the only affidavit filed was the process server's affidavit describing the lost summons, why would BANA need that document removed from the Foreclosure Case file?

At the January 4th Hearing, BANA's counsel, Siobhan Grant, Esq., confirmed that the Lost Instrument Affidavit is, in fact, a lost summons affidavit.  Ms. Grant additionally stated that BANA's prior counsel in the Foreclosure Case lost the original Note.  Ms.

8

Grant added that the law firm at which she works, Liebler Gonzalez & Portuondo, presently is in physical possession of a lost note affidavit (the "Lost Note Affidavit"), which, according to Ms. Grant, never was filed in State Court.

On January 9, 2019, BANA filed a Notice of Filing [DE #244]. Attached as Exhibit "A" to the Notice are two Lost Note Affidavits. The first affidavit is signed by a BANA Assistant Vice President, Rebecca Kowal, and is dated June 15, 2017 [DE #244-1, pp.1-2]. In the first affidavit, Ms. Kowal states that BANA is the servicer of the Note.

The second affidavit is signed by an Original Documents Supervisor with the Choice Legal Group, P.A. firm and is dated May 30, 2017 [DE #244-1, p.7]. The second affidavit has the Foreclosure Case caption and indicates that the original Note was in Choice Legal Group, P.A.'s possession when the original was lost.

Adding to the confusion, Ms. Grant was unable, at the January 4th hearing, to answer questions posed by the Court with regards to BANA's standing in this matter, including whether there was an internal transfer from BANA to CIG between 2007 and 2011 and whether BANA filed the Foreclosure Case as the servicer, the owner, or both the servicer and the owner of the Note.

On October 30, 2018, Plaintiff filed a Motion for Judgment on the Pleadings [D# 214]. Following a hearing on January 4, 2019, the Court entered its January 22, 2019 Order Denying Plaintiff's Motion for Judgment on the Pleadings [DE# 247]. The motion was denied without prejudice to the Plaintiff objecting to BANA's standing to enforce the note and mortgage subject of the proceeding.

Based on the record, the Court found that the Plaintiff had raised issues as to whether BANA has standing and that the standing issue needed to be resolved before discovery went forward. Therefore, the Court found it appropriate to abate discovery, schedule a hearing and set a briefing schedule on the standing issue, all of which is set forth in the Court's January 23, 2019 Standing Issue Scheduling Order.

The Standing Issue Scheduling Order required BANA to file a memorandum and supporting affidavits addressing the following issues:

A.    BANA shall either articulate genuine challenges to the authenticity of the CIG Notice or stipulate that the CIG Notice was sent to the Plaintiff.

B.    BANA shall either articulate genuine challenges to the authenticity of the July 2011 Notice or stipulate that the July 2011 Notice was sent to the Plaintiff.

C.   BANA shall explain the apparent inconsistency between its POC which states that the Note never has been transferred and the July 2011 Notice that specifies that CIG was the owner of the Note on or around June 29, 2011.

D.   BANA shall file an affidavit presenting a detailed description of the ownership and servicing history of the Note from origination through the present day.  This means that every transfer of either ownership or servicing rights shall be described with specificity, identifying the names of the parties involved and their relationship to BANA, and the dates of any transfers of ownership or servicing.

E.   BANA shall affirmatively state whether it is or is not in physical possession of the Note.  If BANA is not in physical possession of the Note, BANA shall explain when it became aware of this fact and why its Lost Note Affidavits do not appear to have been filed in any court prior to BANA's January 9, 2019 notice of filing [DE #244] in this Court.

F.   BANA shall affirmatively describe the capacity in which it presently seeks to enforce the Note (i.e., as the owner, as the servicer, or as both).

G.   BANA shall explain why it repeatedly referred to a lost note affidavit filed in the Foreclosure Case if BANA never filed a lost note affidavit in that case.

11

H.   If the only lost instrument affidavit actually filed in the Foreclosure Case was the process server's affidavit of lost summons, BANA shall explain why it had any reason to request removal of that document from the Foreclosure Case file.

On March 22, 2019, BANA filed its Memorandum of Law Regarding Standing [DE# 265] and two Affidavits (the "Memorandum and Affidavits") [DE#s 266 and 267]. The content of the Affidavits is described later in this Order.

<u>Abatement of the Proceeding and the</u>
<u>Lifting of Abatement to Resolve the Standing Issue</u>

Plaintiff was experiencing health problems in 2019 and requested an extension of time to respond to BANA's Memorandum and Affidavits. Because it was not clear when Plaintiff's health would improve, on May 3, 2019, the Court entered its Order Granting Motion for Reconsideration and Abating Proceeding (the "Abatement Order") [DE# 273].  That Order abated the entire proceeding.

On July 16, 2020, BANA filed a Motion to Lift Abatement of Adversary Proceeding (the "Motion to Lift Abatement") [DE# 305]. Following a hearing on September 24, 2020, the Court entered its September 30, 2020 Order Lifting Abatement and Setting Deadline for Plaintiff to File Response on Standing Issue (the "Order Lifting Abatement") [DE# 313].  That Order clarified that discovery remained abated pursuant to the Standing Issue Scheduling Order, and therefore, the only immediate burden on the Plaintiff was her

obligation to file a response to BANA's Memorandum and Affidavits on the standing issue.

Plaintiff obtained extensions of the November 23, 2020 response deadline set in the Order Lifting Abatement, and on January 7, 2021, Plaintiff filed her Response in Opposition to [BANA's] Standing; Motion for Order to Show Cause Why it Should Not Be Sanctioned for Filing Sham Affidavits; & Vacate 1/23/18 Order (the "Plaintiff's Response") [DE# 328].

The Court has reviewed the record, including relevant portions of the record in the underlying bankruptcy case and, in particular, reviewed BANA's Memorandum and Affidavits and the exhibits attached to these filings. In sum, despite the ambiguities and apparent inconsistencies identified in the Standing Issue Scheduling Order and noted again here, the record provides clear evidence that BANA has standing to enforce the Note. The Note is payable to BANA. There is no evidence that BANA ever endorsed the Note to a different entity or that any party, other than BANA, has ever attempted to enforce the Note. Moreover, BANA has been the servicer of the Note since 2011, and also has standing as servicer to enforce the Note.

In its Order Lifting Abatement, the Court stated that it would either issue a ruling on the standing issue after Plaintiff filed her response or schedule a hearing if the Court determined that

oral argument was necessary [DE# 313, p. 6].  The Court finds that oral argument will not be necessary, and this Order will resolve the standing issue without the need for a hearing.

## Discussion

As described in the Standing Issue Scheduling Order, the standing issue is being decided under a summary judgment standard [DE# 249, p. 10].  Therefore, the Court must determine whether there are any genuine issues of material fact as to whether BANA has standing.  There are not.  The issues that the Court directed BANA to address were addressed fully in its Memoranda and Affidavits.

### The Affidavits Filed By BANA

The first affidavit is the Affidavit of Donna Evertz, Esq. [DE# 266-1].  Ms. Evertz is an attorney with the Marinosci Law Group ("MLG").  MLG was retained by BANA after the Foreclosure Case was dismissed to file a new foreclosure.  MLG also appeared as BANA's counsel in the underlying chapter 13 case.

The Evertz Affidavit addresses the lost note or lost instrument affidavit that was filed in the Foreclosure Case and was the subject of a motion filed by MLG to retrieve the original affidavit from the state court file.  As explained by Ms. Evertz, it is her firm's standard practice to retrieve all original documents contained in a prior foreclosure case before the firm

14

files a new foreclosure case.  This resulted in her firm filing a Motion to Remove Affidavit of Lost Instrument in the Foreclosure Case on March 24, 2016 [DE# 215].

Despite the ambiguities described earlier regarding the original document actually filed in the Foreclosure Case and the status of the original Note,[1] the Court finds that the explanation by Ms. Evertz is credible and supported by the evidence in the record.  There simply was no lost note affidavit filed in the Foreclosure Case, despite references to a lost note affidavit by BANA's counsel.  As it turns out, the instrument that MLG erroneously thought was a lost note affidavit was simply a process server's affidavit regarding loss of the original summons [DE# 251-1 in BKC Case].

The bottom line is this:  BANA's prior counsel, MLG, and its present counsel, caused some confusion regarding the original Note but these were mistakes, not deliberate attempts to gain advantage or hurt the Plaintiff.  The original Note was never filed in the Foreclosure Case and the confusion caused by these mistakes have nothing to do with BANA's standing to enforce the Note.

The second Affidavit was executed by Susan E. Magaddino [DE# 267-1], a BANA representative who reviewed BANA's records

---

[1] The various documents and statements regarding the lost instrument are described in detail on pages 6 through 9, *supra*.

15

regarding the loan at issue. Ms. Magaddino's Affidavit corroborates the facts presented in BANA's Memorandum regarding ownership and servicing of the Note. As explained, and there is no contrary evidence, the name of the "creditor to whom the debt is owed" in the CIG Notice and in the July 2011 Notice, is not a separate entity that received a transfer of the Note. Instead, "CIG HFI 1st Lien Mtg" is an internal investor code. This explanation is not new. In its Supplemental Response to Debtor's Objection to Claim [DE# 153 in BKC Case], BANA stated that "CIG is an identifying internal code used by the Bank and is not an entity separate from Bank of America, N.A." [DE# 153, p. 3].

The Magaddino Affidavit also confirms that BAC Home Loans Servicing LP ("BAC") was the original servicer of the loan. On July 1, 2011, BANA became the servicer when BAC merged into BANA. This change in servicer is described in the July 2011 Notice. There is no evidence in the record that anyone other than BANA has serviced the Note since July 1, 2011.

In sum, the Note was always owned by BANA and after July 1, 2011, was also serviced by BANA. Therefore, despite questions raised in the Standing Issue Scheduling Order, BANA accurately described itself as "the servicer and holder of the Note" in the complaint filed in the Foreclosure Case [DE# 265-3]. Moreover, BANA's POC was accurate in its description of BANA as the creditor

and in its statement that it had not acquired its claim from someone else [Claim 4-1 in BKC Case].

<u>Plaintiff's Response and Request for Other Relief</u>

Plaintiff's response did not contradict BANA's recitation of the facts, focusing instead on unfounded allegations that the Affidavits are a sham, allegations that BANA has acted in bad faith and should be sanctioned, and a repetition of attacks on prior long-final Orders entered in the bankruptcy case or in this adversary proceeding.

Plaintiff continues to attack this Court's December 21, 2016 Order (1) Overruling Objection to Claim Without Prejudice; (2) Denying Motions to Strike and Motion to Compel as Moot; and (3) Setting Deadline for Debtor to File Adversary Proceeding (the "Adversary Order") [DE# 254 in BKC Case]. The Adversary Order overruled Debtor's objection to BANA's POC without prejudice to the Debtor reasserting her objection in this adversary proceeding. It was not a ruling on the merits of her objection which remains pending in Count Five of the Second Amended Complaint. Plaintiff's appeal of the Adversary Order was dismissed without prejudice [DE# 288 in BKC Case].

The response criticizes other prior Orders entered in the main case and in this adversary proceeding and contains several statements accusing this Court of bias in favor of BANA. The Court

is confident that the record refutes these unfounded claims.

The response also asks the Court to set aside the Standing Issue Scheduling Order and to strike BANA's Memorandum and Affidavits.  These requests are also not supported by the record and will be denied.

Finally, the response includes a lengthy argument asserting that BANA waived the right to assert standing by not addressing standing in its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint and Supplemental Second Amended Complaint (the "Answer and Affirmative Defenses") [DE# 121].  This argument is wrong and reflects a misunderstanding of the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure.  If BANA was the plaintiff in a foreclosure case, Garcia, as defendant, could deny standing in her answer or assert lack of standing as an affirmative defense.

BANA's POC asserts that it is the creditor.  The Debtor's Objection to Claim asserts that CIG, not BANA owns the Note, so the issue is framed. BANA had no obligation to address standing in its Answer and Affirmative Defenses. Plaintiff's waiver argument is overruled.

Absent from the response are any facts to refute BANA's standing as both holder and servicer of the Note.  As discussed below, the facts and law demonstrate conclusively that BANA has

standing.

### BANA has Standing as Both the
### Holder and Servicer of the Note

Section 673.3011 of the Florida Statutes states that a person entitled to enforce an instrument includes "the holder of the instrument." A party qualifies as the "holder" of a promissory note if that party is listed as the payee. *Guzman v. Deutsche Bank Nat'l Trust Co.*, 179 So. 3d 543, 545 (Fla. 4th DCA 2015). As applied here, BANA is the payee named in the Note and has not endorsed the Note to any other party. Therefore, BANA has standing to enforce the Note.

In addition to being the holder of the Note, BANA is also the servicer of the Note. The July 2011 Notice advised the Plaintiff that BANA took over from BAC as servicer, and there is no evidence that BANA assigned the servicing of the loan to any other party. As servicer, BANA has a separate, undeniable basis for standing to enforce the Note. *See Rhodes v. JPMorgan Chase Bank, N.A.*, Case No. 12-80368-CIV-Marra, 2012 U.S. Dist. LEXIS 158988 at * 10-11 (S.D. Fla. Nov. 6, 2012).

### Loss of the Original
### Note Does Not Deprive BANA of Standing

The record is now clear that the original Note was lost while it was in the possession of the Choice Legal Group, counsel for BANA in the 2012 Foreclosure Case. Despite prior ambiguity in the

record and confusion by BANA's counsel, the original Note was not filed in the Foreclosure Case and there was no Lost Note Affidavit filed in the Foreclosure Case.

As described earlier, BANA submitted a Notice of Filing in this proceeding [DE# 244] attaching two Lost Note Affidavits. These affidavits were never filed in State Court because BANA has not refiled a foreclosure case in State Court.  The first affidavit executed by Rebecca Kowal, an Assistant Vice-President of BANA, confirms that BANA sent the original Note to Choice Legal Group ("Choice") on October 4, 2010.  As noted earlier, Choice was counsel for BANA in the Foreclosure Case.

The second affidavit, which is Exhibit C to the Kowal affidavit, was executed on May 30, 2017 by Laquenda Matlear, who is identified as the Original Documents Supervisor for Choice. This affidavit confirms that Choice received the original Note on October 7, 2010 and that the original Note was lost while in Choice's possession.  The Matlear affidavit bears the caption of the Foreclosure Case but was not filed in that case.

Enforcement of lost instruments is governed by Fla. Stat. § 673.3091.  A party may enforce a note when the original has been lost if it meets the following conditions described in the statute, quoted below in pertinent part:

(a)  The person seeking to enforce the instrument

was entitled to enforce the instrument when loss of possession occurred . . . ;

(b)  The loss of possession was not the result of a transfer by the person or a lawful seizure; and

(c)  The person cannot reasonably obtain possession of the instrument because the instrument was destroyed [or] its whereabouts cannot be determined.

BANA has satisfied each of these elements.  First, as described earlier, BANA was the holder of the Note when it was sent to Choice on October 7, 2010.  The original Note was lost while in Choice's possession.  These facts are confirmed by the Kowal and Matlear affidavits.

Second, as also noted earlier, BANA never transferred the Note and therefore, the second element is satisfied.  Third, BANA cannot determine the whereabouts of the original.  Choice, in the Matlear affidavit, confirmed that Choice lost the original Note while it was in Choice's possession.

When an original note is in possession of the holder's attorney, the holder has constructive possession of the instrument.  *Fannie Mae v. McFadyen*, 194 So. 3d 418, 423 (Fla. 3d DCA 2016).  Because BANA had the right to enforce the Note when it was lost, had constructive possession when its counsel lost the original, never transferred the Note, and cannot reasonably obtain

possession of the original, BANA has satisfied the requirements of
Fla. Stat. § 673.3091 and has standing to enforce the Note, despite
loss of the original instrument. *Id.*

### Conclusion and Further Proceedings

Potential discrepancies in the record and certain
inconsistent statements by BANA's counsel caused the Court to hit
the "pause" button in this proceeding to confirm whether or not
BANA has standing to enforce the Note that is at the heart of this
proceeding.  After a thorough review, the Court finds no genuine
issue of fact and concludes, as a matter of law, that BANA has
standing.

It is now time for the Plaintiff to prosecute her claims
against BANA.  Unless convinced otherwise, the Court finds that it
should lift the abatement of this proceeding.  Therefore, and for
the reasons stated in this Order, it is –

**ORDERED** as follows:

1.    BANA has standing to enforce the Note.

2.    Plaintiff's challenge to BANA's standing to enforce
the Note is overruled.

3.    The Court rejects Plaintiff's argument that BANA waived
its right to assert standing by not raising standing in its Answer
and Affirmative Defenses.

4.    Plaintiff's request to strike BANA's Memorandum and

Plaintiff's request for sanctions are denied.

5.    Plaintiff's request to vacate the Standing Issue Scheduling Order is denied.

6.    By <u>April 8, 2021</u>, Plaintiff shall file a request to continue the abatement if she is too ill to proceed.  The request must be supported by a doctor's letter demonstrating that the Plaintiff is physically unable to proceed.

7.    If the Plaintiff fails to file a request to continue the abatement by April 8, 2021, BANA may (1) file a Certificate of No Response and upload an Order lifting the abatement; and (2) file a motion requesting a new deadline for the Plaintiff to comply with prior Orders compelling discovery.

                                    ###

COPIES FURNISHED TO:

Laudy Luna, Esq.

Sara I. Garcia
270 W. 57th Street
Hialeah, FL  33012

<u>**CLERK TO SERVE THE PLAINTIFF**</u>